[No. 12349-1-I. Division One. September 23, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. DWIGHT DOUGLAS SMISSAERT, *Appellant.*

*R. Brent Daniel,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Deputy,* for respondent.

WILLIAMS, J.—Dwight Douglas Smissaert was convicted by jury verdict of felony murder in the first degree, committed while armed with a deadly weapon. On August 25, 1980, judgment was entered and Smissaert was sentenced to a maximum term of 20 years in prison. He did not appeal. On October 5, 1982, the trial court entered an

amended judgment (nunc pro tunc to August 25, 1980) and sentenced Smissaert to life in prison. On October 14, 1982, Smissaert filed a notice of appeal in this court, which was dismissed by an unpublished opinion on the ground that it was not timely. The Washington State Supreme Court in *State v. Smissaert,* 103 Wn.2d 636, 694 P.2d 654 (1985) reversed the Court of Appeals and reinstated the appeal.

At his trial Smissaert testified that he and 16–year–old Tom Malone entered 76–year–old Faye Doyle's home while Doyle slept one night. Malone stabbed Doyle 47 times, causing her death. The two boys then left, taking Doyle's purse which contained $15. Smissaert's defense was voluntary intoxication. Several witnesses testified regarding the amount of alcohol he had consumed on the day of the murder; several witnesses for the State testified that Smissaert was not intoxicated prior to leaving for Doyle's home.

The first issue is whether the trial court erred by refusing to allow Smissaert to present expert testimony concerning intoxication, specifically, that of Dr. James Smith, who would have given an opinion as to whether Smissaert was intoxicated at the time of the crime and whether the intoxication would have impaired his judgment. To convict Smissaert of first degree felony murder, the State had to prove the mental element necessary for the underlying felony, first degree burglary. *State v. Frazier,* 99 Wn.2d 180, 661 P.2d 126 (1983). Smissaert argues that Dr. Smith's testimony was necessary to establish the proposition that because of his intoxication he could not formulate the necessary intent to commit the burglary.

■ The admission of expert testimony is within the sound discretion of the trial court, and will not be disturbed on appeal unless there is a manifest abuse of discretion. *State v. Brown,* 17 Wn. App. 587, 564 P.2d 342 (1977). The doctor was prepared to testify essentially that a person of Smissaert's background and weight, who had smoked marijuana on the evening of the crime and had consumed (a) two 12–ounce containers of beer during the afternoon, (b) three or four 12–ounce containers of beer between 4 and 6 p.m., (c) one–third of a fifth of Southern Comfort

between 6 and 9 p.m. and, (d) two 12–ounce containers and two glasses of beer between 9:30 p.m. and 1:30 a.m., would have a severe impairment of his mental functions.

■ Although the trial court did not articulate its reasons for excluding the evidence, its decision can be affirmed because the expert's testimony was simply unnecessary. If the issue involves a matter of common knowledge about which inexperienced persons are capable of forming a correct judgment, there is no need for expert opinion. *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958); *accord, Ward v. J.C. Penney Co.,* 67 Wn.2d 858, 410 P.2d 614 (1966). Numerous witnesses including the defendant testified as to the quantity of alcohol consumed as well as its effect. Certainly the effects of alcohol upon people are commonly known and all persons can be presumed to draw reasonable inferences therefrom especially those who saw Smissaert at the critical time. The defendant was fully able to argue diminished capacity to the jury, the trial court having properly instructed that it could consider Smissaert's intoxication in determining his mental state.[1] The trial court did not abuse its discretion.

■ The second issue is whether the trial court erred by allowing the prosecution to impeach Smissaert with evidence of his prior second degree burglary conviction. The decision whether to admit prior convictions for impeachment purposes is within the discretion of the trial court, *State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980) and, at the time of Smissaert's trial, it was not necessary for the trial court to articulate its ruling on the record. *State v. Thompson,* 95 Wn.2d 888, 632 P.2d 50 (1981).[2] The evidence was properly admitted because it was important for the jury to be able to fully evaluate Smissaert's credibility,

---

[1]Smissaert complains that the trial court misread the instruction. Nothing was said about it to the trial court and the correct instruction was given to the jury to read. The error, if any, was harmless.

[2]It is now mandatory for the trial court to state on the record the factors which favor admission or exclusion of prior conviction evidence. *State v. Jones,* 101 Wn.2d 113, 677 P.2d 131 (1984). But, this requirement is not retroactive. *State v. Rhoads,* 101 Wn.2d 529, 681 P.2d 841 (1984).

only he and his unavailable accomplice knowing what really happened at the Doyle residence.

Affirmed.

WEBSTER, J., concurs.

GROSSE, J. (concurring)—Because I believe the majority incorrectly analyzes the propriety of the action of the trial court in admitting evidence of the defendant's prior conviction for burglary, but because I believe that error harmless, I concur.

Of late, ER 609(a) has been subjected to considerable critical analysis by Washington courts. Most recently, in *State v. Burton,* 101 Wn.2d 1, 676 P.2d 975 (1984) and in *State v. Jones,* 101 Wn.2d 113, 677 P.2d 131 (1984), our Supreme Court has placed significant restrictions on the use of prior convictions as impeachment evidence.

In *Burton,* the majority, construing ER 609(a)(2), adopts a restrictive definition of the term "dishonesty or false statement" such that admission of evidence of a crime under ER 609(a)(2) now requires that the crime include an element of crimen falsi and bear directly on the propensity of the witness for truthfulness. The basis for this restrictive approach is the general purpose of ER 609—to shed light on the credibility of a witness. As to this general purpose of ER 609, the court states:

> The purpose of allowing impeachment by prior conviction evidence is to shed light on the defendant's *credibility* as a witness. Therefore, prior convictions admitted for impeachment purposes must have some relevance to the defendant's ability to tell the truth. Simply because a defendant has committed a crime in the past does not mean the defendant will lie when testifying. We therefore reject any suggestion that lying is an integral facet of the criminal personality, and thus all prior convictions should be admissible.

(Citations omitted.) *Burton,* at 7–8. The majority in *Burton* does however qualify its holding by stating that one purpose for the narrow approach to subsection (a)(2) is to per-

mit continued vitality for the provisions of subsection (a)(1). By its terms this provision does not specifically qualify or restrict impeachment use of prior felony convictions except where the trial court determines that the probative value of those prior felony convictions is outweighed by prejudice to the defendant.

In *State v. Jones, supra,* the court states at the outset that it intends by the decision to "formulate guidelines for the exercise of discretion under ER 609(a)(1) and determine the appropriate harmless error standard for use under ER 609(a)(1)." *Jones,* at 114. Later in the opinion the court reiterates that the question before it is one of clarification and delineation of proper standards. *Jones,* at 118. The court then goes on to state:

> At the outset, we reiterate what was previously emphasized in both *Burton,* and *Alexis* [*State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980)]. When exercising the discretionary authority granted under ER 609(a)(1), a trial court must bear in mind at all times that the sole purpose of impeachment evidence is to enlighten the jury with respect to the defendant's credibility as a witness. Therefore, prior convictions admitted for the purpose of impeachment must have some relevance to the defendant's ability to tell the truth. Simply because a defendant has committed a crime in the past does not mean the defendant will lie when testifying. In these consolidated cases the State argues that because lying is an integral facet of the criminal personality, all prior convictions are per se admissible. We disagree.

> In *State v. Alexis, supra,* we clearly rejected any per se rule for the admissibility of prior conviction evidence. ER 609(a)(1) requires the exercise of discretion. Moreover, *crimes which are not automatically admissible as crimes involving "dishonesty or false statement" under ER 609(a)(2) must have some relevance to the defendant's ability to testify truthfully.*

(Citations omitted. Italics mine.) *Jones,* at 118–19.

The position of our Supreme Court in *Jones* is clear. Evidence of prior convictions is inherently prejudicial and there are few crimes other than those involving dishonesty or false statement that are probative of a witness's veracity.

The court states that the most important consideration in this analysis is the necessity of hearing the defendant's side of the story; that the trial court should consider whether the defendant is the only one who can testify in his or her defense; that the more crucial the defendant's testimony is the more crucial it is that the jury not be misled as to his or her credibility. These are identified as the "most important factors." The court then restates what are known as the *Alexis*[3] factors:

> (1) the type of crime—*crimes of violence are not usually probative of the defendant's propensity to lie*[;] (2) the remoteness of the prior conviction—*the older the conviction, the less probative it is of the defendant's credibility*[;] (3) the similarity of the prior crime—*the greater the similarity, the greater the possible prejudice*[;] (4) the age and circumstances of the defendant—was the defendant very young, were there extenuating circumstances?; (5) whether the defendant testified at the previous trial—*if the defendant did not testify, the prior conviction has less bearing on veracity*[;] (6) the length of the defendant's criminal record—unnecessarily cumulative prior convictions are more prejudicial.
> . . . In each case the balancing procedure must be followed. Moreover, it is imperative that this balancing process be meaningful.

(Citations omitted. Italics mine.) *Jones,* at 121–22.

The point of all this is that *State v. Jones, supra,* does a great deal more than simply require that the balancing process originally articulated in *Alexis* be set forth on the record. The case underscores the need for that balancing process to be one of weighing the probative value of the evidence *with regard to the witness's credibility* against the prejudicial effect it will have on the defendant. Further, the crime which resulted in the conviction, evidence of which is sought to be introduced, must involve some element of crimen falsi.

In the instant matter the crime is felony murder; the defense one of diminished capacity due to intoxication

---

[3]*State v. Alexis,* 95 Wn.2d 15, 621 P.2d 1269 (1980).

negating the defendant's ability to form the specific intent necessary to commit the burglary during which the murder of the victim by the defendant's accomplice occurred. Burglary is not a crime involving an element of dishonesty as that term is defined in *Burton.*

> Therefore, the category of crimes involving "dishonesty" is defined to include only those crimes having elements in the nature of *crimen falsi,* the commission of which involves some element of deceit, fraud, untruthfulness or falsification bearing on the accused's propensity to testify truthfully.

*Burton,* at 10.

One could argue that a prior conviction for burglary is probative for impeachment in the sense that a defendant who is arguing that he lacked the capacity to form the intent to commit another burglary is more likely than not to have known what he was doing and thus not be telling the truth when he says he did not know.[4] I believe the evidence in the instant matter of the prior conviction is of questionable probative value with respect to the defendant's credibility. However, on the other side of the ledger, apart from the similarity between the two crimes, I believe that the prejudicial effect in admitting this evidence was de minimis since the defense was diminished capacity. I am not prepared to say from the perspective of this court that the trial judge abused his discretion in his weighing of the factors of probity versus prejudice.

Moreover, even if one views admission of the prior conviction for attempted burglary as error, the result reached

---

[4]Unfortunately, this evidence also leads to the prejudicial inference that the defendant acted in conformity with his prior bad behavior. Of course, such evidence is inadmissible unless offered for the purpose of "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident", ER 404(b), and then only if its probative value as to an essential element of the crime charged outweighs its potential for prejudice. Further, the jury must be properly instructed as to the purpose for which it is admitted. *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982). The prejudice to be weighed is the same as that with respect to ER 609: whether the evidence unduly leads the trier of fact to conclude that one who has done it before is more likely than not to have done it again. *See State v. Jackson,* 102 Wn.2d 689, 689 P.2d 76 (1984).

by the majority in this case should stand because review of the record reveals the error to be harmless beyond a reasonable doubt. *Jones,* at 125.

Review denied by Supreme Court November 22, 1985.